IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MAREIO ANDERSON,   )   | |
|       Petitioner,   )   | |
| )   | |
| v.   )   | No. 3:09-CV-1705-D-BF |
| )   | |
| RICK THALER, Director, Texas Dept. Of Criminal   )   | |
| Justice, Correctional Institutions Division,   )   | |
|       Respondent.   )   | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I.  Procedural Background**

On February 4, 2006, Petitioner was convicted of capital murder involving the deaths of three people. *State v. Anderson*, No. F-0600008-Q (204th Jud. Dist. Ct., Dallas County, Tex., Feb. 4, 2006). Petitioner was sentenced to life imprisonment. On July 12, 2007, the Fifth District Court of Appeals affirmed the conviction and sentence. *Anderson v. State*, No. 05-06-00233-CR (Tex. App. – Dallas, July 12, 2007, pet. ref'd). On November 21, 2007, the Court of Criminal Appeals refused Petitioner's petition for discretionary review. PDR No. 1325-07.

On May 18, 2009, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Anderson*, Application No. 72,632-01. On September 2, 2009, the Court of Criminal Appeals denied the petition without written order.

On September 9, 2009, Petitioner filed this federal petition. On January 19, 2010,

Petitioner filed an amended petition. He argues:

(1) he received ineffective assistance of counsel because counsel failed to:

    (a) Request a jury instruction on defense of a third person;

    (b) Investigate, develop and present evidence "supporting his chosen theory of the defense";

    (c) articulate an effective closing argument; and

(2) he received ineffective assistance of appellate counsel when counsel failed raise insufficiency of the evidence on direct appeal.

On September 1, 2010, Respondent filed its answer. On October 5, 2010, Petitioner filed a response. The Court determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> Anderson accompanied three men – Troy Dorn, Freeman Evans, and Tim Scoggins – to a Dallas apartment, ostensibly to purchase drugs. The apartment was owned by Chateto Brown. Dorn and Evans went into the apartment and met Alejandro Pena and Elihu Hernandez. Anderson and Scoggins remained outside and acted as lookouts. After some time passed, and various participants left and then re-entered the apartment, Dorn called Anderson and summoned him to the apartment. Soon thereafter, gunshots were fired inside the apartment and out in the parking lot. Inside the apartment, the drug deal had gone bad. Evans shot and killed Pena; Dorn and Hernandez shot each other; after Hernandez fell, Evans shot him as well. Outside the apartment, Scoggins fired on the car in which the dealers had arrived. Anderson, on his way up to the second-floor apartment, shot and killed Brown. Anderson left with Evans; they took the cocaine and divided it among themselves and Scoggins. There was evidence at trial the (sic) a robbery was planned from the outset, but Anderson and Evans both testified and denied they had planned a robbery as opposed to a drug purchase. Anderson and Evans also testified they shot the victims in self-defense.

*Anderson v. State*, No. 05-06-00233-CR, slip op. at 1-2.

### III. Discussion

1. **Standard of Review**

    The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

    >   (d)   An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
    >
    >   (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    >
    >   (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

    *See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

2. **Ineffective Assistance of Counsel**

    Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive

Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Defense of a Third Person

Petitioner argues his counsel was ineffective because he failed to request a jury instruction on defense of a third person. He argues this instruction was applicable to the deaths of Pena, who was killed by Evans, and Hernandez, who was killed by Evans and Dorn.

Texas Penal Code § 9.33 governs defense of a third party. It states:

A person is justified in using force or deadly force against another to protect a third person if:

(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 [self-defense] or 9.32 [deadly force in defense of person] in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening a third person he seeks to protect; and

>   (2)   the actor reasonably believes that his intervention is immediately necessary to protect the third person.

By the plain terms of the statue, the person who is entitled to claim this defense is the person who uses the force or deadly force against another. In this case, although Petitioner argues he was going upstairs to aid Evans and Dorn at the time of the shooting, there was no evidence at trial that Petitioner used force or deadly force against decedents Pena and Hernandez. Petitioner was therefore not entitled to a jury instruction on defense of a third person.

>   B.   **Failure to Adequately Investigate and Present Defense**

Petitioner argues his counsel was ineffective because he failed to adequately investigate and present the case. Petitioner states the prosecutor argued that Petitioner and his co-defendants intended to rob the victims of drugs and did not intend to buy the drugs. To support the claim of a robbery, the prosecutor argued there was insufficient money found at the scene for Petitioner and his co-defendants to have intended to buy the drugs.

Testimony showed that Dorn first took money up to the apartment to buy marijuana. (Trial Tr. Vol. 7 at 108, 185-186). Petitioner testified that Dorn then wanted to buy about $90,000 worth of cocaine and that he saw Dorn take $90,000 up to the apartment. (*Id*. at 145.) Petitioner and Evans stated that two Hispanic drug dealers drove to the apartment in a Ford Taurus to bring the cocaine. (*Id*. at 122, 195.) One went upstairs, the other stayed in the Ford Taurus. (*Id*. at Vol. 6 at 96.) After the shooting in the apartment, Petitioner and Evans ran back to their car in the apartment parking lot. (*Id*. at Vol. 7 at 210). Scoggins was already in the car. He shot at the Hispanic male who was waiting in the Ford Taurus. (*Id*. at Vol. 6 at 109 and Vol. 7 at 211.) Petitioner testified that after the shooting, the Hispanic man who was in the Ford

Taurus could have gone back to the apartment and taken the $90,000. (*Id*. at Vol. 7 at 163 -64.)

On state habeas review, Petitioner submitted copies of one police report stating that a witness told police he saw a Hispanic male leaving the location after shots were filed. (*Ex parte Anderson* at 96-97). Another police report stated that the apartment manager and district manager told police they saw an unidentified Hispanic male leave the area after the shots were fired, that the Hispanic male left in a hurry and that he was looking over his shoulder as he left. (*Id*.) Petitioner argues his counsel should have either called these witnesses at trial, or called the police officers who interviewed these witnesses. Petitioner states his counsel was ineffective for failing to use these witnesses to cast doubt on the robbery theory.

On state habeas review, defense counsel submitted an affidavit stating he did not call the unknown Hispanic male as a witness because no one was aware of his identity. (*Ex parte Anderson* at 158.). Counsel did not respond to Petitioner's claim that he should have either called the witnesses who saw this Hispanic male, or the police officers who took these witnesses' statements.

Petitioner, however, fails to show he was prejudice by his attorney's actions. The jury was aware that one of the Hispanic drug dealers left the apartment before the shooting started and went to sit in a Ford Taurus in the parking lot. Petitioner, Evans and Scoggins testified to this fact. (Trial Tr. Vol. 6 at 96 and Vol. 7 at 121-22; 187.) Scoggins testified that after the shooting began inside the apartment, he shot at the drug dealer who was in the Ford Taurus. (Trial Tr. Vol. 6 at 109.) Detective Ellzey testified police found the Ford Taurus in the apartment parking lot, and that it had multiple bullet holes. (Trial Tr. Vol. 5 at 166-167.) The

jury was therefore aware that the drug dealer who was in the Ford Taurus was not located by police.

Additionally, Tamika Cary testified that Petitioner told her he was going to "hit a lick" against some Hispanics at an apartment in Oak Cliff. (Trial Tr. Vol. 7 at 12-13.) Although there was conflicting testimony at trial regarding whether "hit a lick" meant a robbery, Detective Reidler testified that "hit a lick" meant commit a robbery. (*Id*. at 88-89.)

Further, jurors were charged with four possible theories of capital murder, only one of which required proof of a robbery. The other three theories allowed a finding of capital murder if the jurors found: (1) Petitioner aided or attempted to aid either Troy Dorn or Freeman Evans in the murder of either Hernandez or Pena; (2) Petitioner aided or attempted to aid Troy Dorn and/or Freeman Evans in the murders of Hernandez and Pena; or (3) that Petitioner entered into a conspiracy with Troy Dorn and Freeman Evans to possess more than 400 grams of cocaine and that in an attempt to carry out the conspiracy Dorn intentionally killed Hernandez, Evans intentionally killed Pena and the deaths were committed in furtherance of the purpose to possess the cocaine and the killings should have been anticipated by Petitioner. (*Ex parte Anderson* at 12-13.)

Petitioner, therefore, has failed to show that but for defense counsel's failure to call these witnesses, there is a reasonable probability that the results of the trial would have been different.

### C. Closing Argument

Petitioner argues his counsel was ineffective because counsel failed to make an effective closing argument that there was no agreement between Petitioner and his co-defendants to commit a robbery, and/or that Petitioner was not a party to any agreement to commit a robbery.

Petitioner states that although his counsel made this argument in closing, he did not spend sufficient time on the argument.

In closing, Petitioner's counsel argued numerous times that no robbery occurred and that if there was a robbery, Petitioner was not a party to it. (Trial Tr. Vol. 8 at 98-99, 100, 108-109). Defense counsel also pointed out that co-defendant Scoggins, who was a state's witness at Petitioner's trial, also testified there was no robbery. (*Id*. at 98.) Defense counsel also tried to discredit testimony that Petitioner said he was going to "hit a lick" and that this meant he would commit a robbery. (*Id*. at 109.) Moreover, defense counsel was provided thirty minutes for closing arguments. Within this time he made multiple arguments that there was no robbery, that Petitioner was not involved in any robbery, that Petitioner killed Chateto Brown in self-defense, that co-defendant Scoggins was not credible and that the state failed to prove any of the four theories of capital murder. Petitioner has failed to show he received ineffective assistance of counsel during closing arguments.

### D.     Appellate Counsel

Petitioner argues he received ineffective assistance of appellate counsel because appellate counsel failed to raise the claim that the evidence was factually insufficient to support the conviction.

At the time of Petitioner's trial, Texas courts recognized claims of both factual insufficiency of the evidence and legal insufficiency of the evidence.[1] The evidence is factually

---

[1] In *Brooks v. State,* 323 S.W.3d 893, 902 (Tex. Crim. App. 2010), the Texas Court of Criminal Appeals determined there was "no meaningful distinction" between the factual sufficiency standard and the legal sufficiency standard. The Court therefore held that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legally sufficient evidence standard "is the only standard that a reviewing court should apply . . . ." *Id*. at 912.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -8-

insufficient, if after viewing all of the evidence in a neutral light, the jury's verdict is either "clearly wrong or manifestly unjust" or is "against the great preponderance of the [conflicting] evidence." *Brooks v. State*, 323 S.W.3d 893, 899 n.12 (Tex. Crim. App. 2010) (citing *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)).

On state habeas review, appellate counsel submitted an affidavit addressing this claim. Appellate counsel's affidavit discussed the extensive evidence against Petition.

> [T]he evidence shows that multiple deaths occurred at the scene of a drug transaction. Anderson went to the drug transaction as a lookout. In that capacity, when prompted, he ran upstairs and shot Mr. Brown. Simultaneously, his cohorts were engaged in a shootout in which several others were killed. Anderson's self-defense claim . . . was thoroughly rejected by the jury at trial. Capital murder is the commission of multiple unjustifiable homicides in the course of a criminal episode. Here, several people died in a firefight, and Anderson cannot seriously contend that any of the killings were excusable under the law. Moreover, Anderson was present and armed to facilitate the drug transaction/robbery as a "soldier" or lookout. Thus, Anderson played an active role in the episode during which the deaths resulted.
>
> Next Anderson contends that, although he traveled to the scene of the drug transaction in a heavily armed caravan, carrying paramilitary weapons, he could not have anticipated that death would result. Really. While Anderson may contend carrying weapons does not mean death can be anticipated, there is ample authority to the contrary. . . .
>
> Finally, Anderson points to the fact that several of his cohorts denied a predetermined robbery. These denials were offset by conflicting testimony, as set out in the record, that Anderson was going to "hit a lick," meaning commit a robbery. The meaning of this term was a key issue in this case and was a focal point for both sides. . . . The jury determined these conflicts against Anderson. . . .
>
> The jury was given multiple scenarios upon which to convict. The jury could readily have found that multiple murders were committed in the commission of a drug transaction, as set out in either the first or fourth application paragraphs.

(*Ex parte Anderson* at 161-62.) Counsel also stated the appellate court had, to his knowledge, "virtually never reversed a case for factual insufficiency." (*Id*. at 162).

In light of the substantial evidence admitted at trial against Petitioner, Petitioner has

failed to show his counsel was constitutionally deficient for failing to raise a factual insufficiency of the evidence claim on direct appeal.

3. **Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 13th day of February, 2012.

_____
**PAUL D. STICKNEY**
**UNITED STATES MAGISTRATE JUDGE**

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).